IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| DAVID KELIIHANANUI, | ) | CIVIL NO. 09-00151 JMS/LEK |
| | ) | |
| Plaintiff, | ) | ORDER: (1) GRANTING |
| | ) | PLAINTIFF'S MOTION FOR |
| vs. | ) | SUMMARY JUDGMENT ON THE |
| | ) | ISSUE OF SEAMAN'S STATUS |
| KBOS, INC., a domestic for profit | ) | AND COVERAGE UNDER 46 U.S.C. |
| corporation, et al., | ) | § 30104, THE JONES ACT; |
| | ) | (2) GRANTING IN PART AND |
| Defendants. | ) | DENYING IN PART PLAINTIFF'S |
| | ) | MOTION FOR SUMMARY |
| | ) | JUDGMENT COMPELLING |
| | ) | MAINTENANCE AND CURE; AND |
| | ) | (3) GRANTING IN PART AND |
| | ) | DENYING IN PART PLAINTIFF'S |
| | ) | MOTION FOR SUMMARY |
| | ) | JUDGMENT ON THE ISSUE OF |
| | ) | DEFENDANTS' PRIVITY AND |
| | ) | KNOWLEDGE WITH RESPECT TO |
| | ) | THE OPERATION OF THE M/V |
| | ) | ALOHA PARASAIL AND TO |
| | ) | STRIKE DEFENDANTS' |
| | ) | LIMITATION OF LIABILITY |
| _____ | ) | DEFENSE |

**ORDER: (1) GRANTING PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT ON THE ISSUE OF SEAMAN'S STATUS AND COVERAGE
UNDER 46 U.S.C. § 30104, THE JONES ACT; (2) GRANTING IN PART
AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT COMPELLING MAINTENANCE AND CURE; AND (3)
GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT ON THE ISSUE OF DEFENDANTS'
PRIVITY AND KNOWLEDGE WITH RESPECT TO THE OPERATION
OF THE M/V ALOHA PARASAIL AND TO STRIKE DEFENDANTS'
LIMITATION OF LIABILITY DEFENSE**

# I.  <u>INTRODUCTION</u>

Starting in October 2007, Plaintiff David Keliihananui ("Plaintiff") was employed by Defendant KBOS, Inc. ("KBOS"), assisting with its parasailing tours on the M/V ALOHA PARASAIL (the "M/V ALOHA PARASAIL" or the "Vessel") and completing other duties.  On January 30, 2009, Plaintiff injured his knee while boarding the Vessel, and now brings this action alleging Jones Act negligence, unseaworthiness, maintenance and cure, and vessel owner negligence against Defendants KBOS, Morning Star Cruises, Inc. ("Morning Star"), Aloha Parasail, Inc. ("Aloha Parasail"), the Vessel, PY Investments, Inc. ("PY Investments"), and Paul Yip ("Yip") (collectively, "Defendants").

Currently before the court are Plaintiff's Motions for Summary Judgment against Defendants on: (1) Plaintiff's status as a seaman ("Pl.'s Mot. 1"); (2) Plaintiff's claim for maintenance and cure ("Pl.'s Mot. 2"); and (3) Defendants' affirmative defense under the Limitation of Liability Act of 1851 (the "Limitation Act"), ("Pl.'s Mot. 3").  Based on the following, the court: (1) GRANTS Plaintiff's Motion for Summary Judgment as to Plaintiff's seaman status; (2) GRANTS in part and DENIES in part Plaintiff's Motion for Summary Judgment on maintenance and cure; and (3) GRANTS in part and DENIES in part Plaintiff's Motion for Summary Judgment on Defendants' limitation of liability

defense.

## II.  <u>BACKGROUND</u>

**A.  Factual Background**

Yip is the 100% owner of PY Investments.  Pl.'s Ex. I at 56.[1]  KBOS and Morning Star are wholly owned by PY Investments, and Aloha Parasail is wholly owned by Morning Star.  *Id.*; *see also* Pl.'s Ex. A (Plaintiffs' Requests for Admissions).[2]  Yip is the president, secretary, treasurer, and director of PY Investments and KBOS, and the president and director of Morning Star and Aloha Parasail.  Pl.'s Ex. A.

On November 2, 2007, Plaintiff was hired by KBOS on a part-time, on call basis.  Yip Decl. ¶ 4; *see also* Defs.' Ex. B (showing that Plaintiff worked anywhere from zero to 133 hours per month from October 2007 through January 2009).

Plaintiff asserts that he spent almost all of his time working aboard the M/V AIKANE, a jet ski barge, and the M/V ALOHA PARASAIL, a 28 foot, six-passenger open motor boat.  *See* Pl.'s Decl. ¶ 7.  Specifically, Plaintiff asserts that

---

[1]  Unless otherwise noted, all references to exhibits are from Plaintiff's Motion for Summary Judgment on the issue of seaman status.  Doc. No. 48

[2]  Defendants never filed any response to Plaintiff's First Request for Admissions to Yip, and the court therefore deems them admitted.  *See* Fed. R. Civ. P. 36(a)(3).

he spent approximately 25% of his time either getting the boats prepared to get

underway or cleaning the boats up at the end of the day, and spent the remainder of

his time working on the boats while they were either underway or anchored

offshore.  *Id.* ¶ 4.  His work aboard the boats included handling the mooring lines,

making sure the boats were fueled and the gear properly prepared, helping

passengers on and off the boat, and helping passengers with parasailing, scuba, and

jet skiing activities.  *Id.* ¶ 5.

In deposition testimony, Yip confirmed that Plaintiff was a deckhand,

*i.e.*, a member of the crew on the M/V ALOHA PARASAIL.  Pl.'s Ex. I at 103-

104.  Yip also asserts, however, that Plaintiff performed a variety of duties

including janitorial and maintenance services, operating KBOS vehicles, greeting

and assisting customers, cleaning and maintaining equipment, and working as a

deckhand aboard the Vessel.  Yip Decl. ¶ 6.

On January 30, 2009, Plaintiff started work at 6:30 a.m., prior to his

official 7:00 a.m. start time, to get the M/V ALOHA PARASAIL ready for the day.

Pl.'s Decl. ¶ 8; *see also* Pl.'s Ex. K; Yip Decl. ¶ 9.  Because the Vessel did not

have any gangway, plank, or ladder as a means to board, individuals were required

to jump from the pier onto the boat.  Pl.'s Decl. ¶ 12; *see also* Pl.'s Ex. B (showing

Vessel moored to dock).  When jumping onto the Vessel, Plaintiff injured his knee.

4

Pl.'s Decl. ¶ 13.

Randell Yamane, Plaintiff's supervisor, subsequently completed a Coast Guard "Report of Marine Accident, Injury or Death" form indicating that Plaintiff was a deckhand and injured his knee while boarding the vessel. Pl.'s Ex. C. Yamane also listed Morning Star as the operating company of the Vessel.

Plaintiff has incurred over $30,000 in medical bills for the surgery and treatment of his knee, Pl.'s Ex. F, but has not fully recovered. A June 2, 2009 memo by Dr. Kevin Christensen, Plaintiff's doctor, states that Plaintiff lacks full extension in his knee and suffers anterior knee pain. Pl.'s Ex. D. Dr. Christensen prescribed a hinged-knee brace and physical therapy and asserts that without these treatments Plaintiff can regain full knee extension. *Id.* Plaintiff has not received these services, however, because he cannot afford them. Pl.'s Decl. ¶ 20.

KBOS paid Plaintiff maintenance in the amount of $30.00 per day, *see* Pl.'s Ex. E; Defs.' Opp'n Mot. 2 Ex. E, but stopped paying Plaintiff in July 2009 when Defendants formed the belief that Plaintiff was not injured in the course of his employment or while servicing the vessel. Yip Decl. ¶ 15; Pl.'s Decl. ¶ 16. In early August 2009, Yip sent Plaintiff's attorney a letter stating that Plaintiff was no longer employed by KBOS because its parasailing permit was found invalid. Pl.'s Exs. G, H. Plaintiff began receiving unemployment benefits in January 2010. Pl.'s

Decl. ¶ 18.

Plaintiff has been unable to find steady work since his injury, Pl.'s

Decl. ¶ 19, but did find work for three weeks in October 2009 on the fishing vessel

the KOLEA, and has offloaded tuna from boats   *See* Defs.' Ex. A at 112-13.

Plaintiff asserts that he has depleted his savings, lived on handouts of food,

borrowed money from family and friends, and receives food stamps.  *See* Pl.'s

Decl. ¶ 19.  Prior to his injury, Plaintiff slept on one of Defendants' boats, the

ALEALEKAI V, but has been homeless for most of the time since KBOS stopped

paying maintenance.  *Id*. ¶¶ 7, 19.

**B.     Procedural Background**

On April 6, 2009, Plaintiff filed his Complaint against Defendants,

alleging Jones Act negligence, unseaworthiness, maintenance and cure, and vessel

owner negligence.

Plaintiff first filed a motion for summary judgment on the issues of

Jones Act negligence, unseaworthiness, and maintenance and cure on October 21,

2009.  In opposition, Defendants argued, among other things, that they should be

granted a Federal Rule of Civil Procedure 56(f) continuance to allow the parties to

carry out discovery relevant to Plaintiff's claims.  During a November 19, 2009

status conference, Plaintiff agreed to withdraw his motion for summary judgment

to allow discovery.

On February 10, 2010, Plaintiff filed the present Motions for Summary Judgment.  Plaintiff argued that summary judgment should be granted because, among other reasons, Defendants had failed to carry out any discovery. During a March 22, 2010 status conference, Defendant again requested additional time for discovery, and the court granted a short continuance by moving the hearing date on Plaintiff's Motions from April 6, 2010 to May 24, 2010.  On May 3, 2010, Defendants filed their Oppositions, and Plaintiff filed his Replies on May 10, 2010.  A hearing was held on May 24, 2010.

## III.  <u>STANDARD OF REVIEW</u>

Summary judgment is proper where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  Rule 56(c) mandates summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also Broussard v. Univ. of Cal. at Berkeley*, 192 F.3d 1252, 1258 (9th Cir. 1999).

"A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and of identifying those portions of

the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007) (citing *Celotex*, 477 U.S. at 323); *see also Jespersen v. Harrah's Operating Co.*, 392 F.3d 1076, 1079 (9th Cir. 2004). "When the moving party has carried its burden under Rule 56(c) its opponent must do more than simply show that there is some metaphysical doubt as to the material facts [and] come forward with specific facts showing that there is a *genuine issue for trial*." *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586-87 (1986) (citation and internal quotation signals omitted); *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-48 (1986) (stating that a party cannot "rest upon the mere allegations or denials of his pleading" in opposing summary judgment).

"An issue is 'genuine' only if there is a sufficient evidentiary basis on which a reasonable fact finder could find for the nonmoving party, and a dispute is 'material' only if it could affect the outcome of the suit under the governing law." *In re Barboza*, 545 F.3d 702, 707 (9th Cir. 2008) (citing *Anderson*, 477 U.S. at 248). When considering the evidence on a motion for summary judgment, the court must draw all reasonable inferences on behalf of the nonmoving party. *Matsushita Elec. Indus. Co.*, 475 U.S. at 587; *see also Posey v. Lake Pend Oreille Sch. Dist. No. 84*, 546 F.3d 1121, 1126 (9th Cir. 2008) (stating that "the evidence

8

of [the nonmovant] is to be believed, and all justifiable inferences are to be drawn in his favor." (citations omitted)).

## IV.  DISCUSSION

Plaintiff brings three separate Motions for Summary Judgment on (1) Plaintiff's status as a seaman, (2) Plaintiff's right to maintenance and cure, and (3) Defendants' defense under the Limitation Act.  The court addresses each of Plaintiff's Motions in turn.[3]

### A.    Applicability of the Jones Act:  Seaman Status

The Jones Act "provides a cause of action in negligence for 'any seaman' injured in the course of his employment.'"  *Chandris, Inc. v. Latsis*, 515 U.S. 347, 354 (1995) (quoting 46 U.S.C. § 688(a)).  The rights afforded a "seaman" under the Jones Act are mutually exclusive to those provided by the Longshore and Harbor Workers' Compensation Act (the "LHWCA") for land-based maritime workers.  *Id.* at 355.  Further, only if neither the Jones Act nor the LHWCA applies may an individual seek recovery under a state workers'

---

[3]  In addition to the arguments addressed below, Plaintiff argues that he is entitled to summary judgment because Defendants failed to follow Local Rule 56.1 requiring Defendants to file a concise statement of facts.  Defendants' failure to follow the Local Rules is inexplicable, especially after Defendants delayed in having the court address Plaintiff's Motions.  The court finds, however, that the sanction contained in the Local Rules -- that Plaintiff's material facts be deemed admitted, *see* Local Rule 56.1(g) -- is unnecessary given that Defendants have largely failed to counter Plaintiff's evidence.

compensation plan or under general maritime tort principles.  *Id.* at 355-56.

Plaintiff argues that he should be afforded seaman status such that his injury falls within the purview of the Jones Act.  Although the Jones Act does not define the term "seaman," the Supreme Court has outlined a "status-based standard" with two "essential requirements:" (1) the employee's duties must "contribute to the function of the vessel or to the accomplishment of its mission;" and (2) the employee must have a "connection to a vessel in navigation (or to an identifiable group of such vessels) that is substantial in terms of both its duration and its nature."  *Id.* at 368.

This inquiry into seaman status is fact-specific and should generally be submitted to a jury.  *Id.* at 371; *see also Harbor Tug & Barge Co. v. Papai*, 520 U.S. 548, 554 (1997) (finding that the issue of seaman status under the Jones Act "is a mixed question of law and fact, and it often will be inappropriate to take the question from the jury.").  Summary judgment may be appropriate, however, if "the facts and the law will reasonably support only one conclusion."  *McDermott Int'l, Inc. v. Wilander*, 498 U.S. 337, 356 (1991); *see also Chandris*, 515 U.S. at 371 ("And where undisputed facts reveal that a maritime worker has a clearly inadequate temporal connection to vessels in navigation, the court may take the question from the jury by granting summary judgment or a directed verdict.").  The

court therefore addresses the two requirements to determine whether Plaintiff is entitled to seaman status as a matter of law.

The first requirement -- that Plaintiff's duties contribute to the function of the M/V ALOHA PARASAIL and/or its mission -- is easily met. This requirement is "very broad," and renders "[a]ll who work at sea in the service of a ship" eligible for seaman status. *Chandris*, 515 U.S. at 368 (internal quotations omitted). Defendants admit that Plaintiff's duties included being a deckhand aboard the Vessel, Yip Decl. ¶ 6, and Plaintiff assisted the Vessel with its functions as a tourist boat. Pl.'s Decl. ¶ 5. In fact, Defendants do not appear to dispute that this first requirement is met. *See* Defs.' Mot. 1 Opp'n at 6 (arguing only that Plaintiff's connection with the vessel "was not substantial either in its duration or nature"). Accordingly, Plaintiff has carried his burden on this first requirement.

Defendants do dispute, however, that Plaintiff has proven the second requirement that Plaintiff has a connection to the Vessel that is substantial in terms of both its duration and its nature. The "substantial connection" requirement is designed to "separate the sea-based maritime employees who are entitled to Jones Act protection from those land-based workers who have only a transitory or sporadic connection to a vessel in navigation, and therefore whose employment

11

does not regularly expose them to the peril of the sea." *Chandris*, 515 U.S. at 368.

In other words, this requirement focuses on "whether the employee's duties take

him to sea." *Papai*, 520 U.S. at 555. The specific facts of each case should guide

the court and the "ultimate inquiry is whether the worker in question is a member

of the vessel's crew or simply a land-based employee who happens to be working

on the vessel at a given time." *Chandris*, 515 U.S. at 370.

Plaintiff has carried his summary judgment burden on his seaman

status. First, the evidence presented establishes that Plaintiff's connection to the

M/V ALOHA PARASAIL is substantial in terms of duration. A "rule of thumb"

for an ordinary case for determining seaman status is that "[a] worker who spends

less than about 30 percent of his time in the service of a vessel in navigation should

not qualify as a seaman under the Jones Act."[4] *Id.* at 371. Applying this principle,

Plaintiff has a clearly adequate temporal connection to the M/V ALOHA

PARASAIL -- the evidence establishes that Plaintiff spent most of his work day

aboard the M/V AIKANE and the M/V ALOHA PARASAIL either preparing them

for tourist operations or during the tourist events themselves. *See* Pl.'s Decl. ¶ 7.

---

[4] The court recognizes that this thirty percent rule of thumb "serves as no more than a
guideline established by years of experience, and departure from it will certainly be justified in
appropriate cases." *Chandris Inc. v. Latsis*, 515 U.S. 347, 371 (1995). As described in this
Order, however, the facts of Plaintiff's work aboard the M/V ALOHA PARASAIL do not justify
a departure from this guideline, especially where the evidence establishes that Plaintiff spent the
majority of his work day on the vessel and his work was directly related to its operation.

Specifically, Plaintiff asserts that he spent approximately twenty-five percent of his time either preparing or cleaning the boats, and spent the remainder of his time -- *i.e.*, seventy-five percent -- working on the boats while they were either underway or anchored offshore.  *Id.* ¶ 4; *see also Mudrick v. Cross Equip. Ltd*, 250 Fed. Appx. 54, 59 (5th Cir. 2007) (finding that plaintiff carried his burden on the temporal requirement where he worked thirty-two percent of his time performing marine work on vessels).

Plaintiff has also put forth evidence showing that the nature of his connection to the M/V ALOHA PARASAIL is substantial.  Plaintiff's work aboard the boats included handling the mooring lines, making sure the boats were fueled and the gear properly prepared, helping passengers on and off the boats, and helping passengers with parasailing, scuba, and jet skiing activities.  Pl.'s Decl. ¶ 5. In sum, Plaintiff has met his burden on summary judgment by showing that the totality of his work -- *i.e.*, the time Plaintiff spent aboard the Vessel and the nature of his work -- leads to the singular conclusion that Plaintiff was a Jones Act seaman.  *See Mudrick*, 250 Fed. Appx. at 60.

In response, Defendants have failed to present "specific facts showing there is a genuine issue for trial."  Fed. R. Civ. P. 56(e).  Instead, Defendants rely on the Yip Declaration, which asserts in conclusory fashion that Plaintiff

performed a variety of duties including janitorial and maintenance services,

operating KBOS vehicles, greeting and assisting customers, cleaning and

maintaining equipment, and working as a deckhand aboard the M/V ALOHA

PARASAIL.  Yip Decl. ¶ 6.  Even drawing all inferences in favor of Defendants,

this evidence fails to contradict Plaintiff's proof.  Specifically, the Yip Declaration

does not contradict Plaintiff's statement that the tasks he performed all related to

the operation of the vessel -- Plaintiff asserts that he prepared the vessel at the

beginning of the day, cleaned the boats at the end of the day, and assisted

passengers.  More importantly, the Yip Declaration does not challenge in any

manner Plaintiff's unequivocal assertion that seventy-five percent of his working

time was spent actually on vessel -- the Yip Declaration admits that Plaintiff

worked as a deckhand and is otherwise silent regarding how Plaintiff's time was

allocated between tasks.[5]  *Cf. Becker v. Dillingham Const. Pac., Ltd.*, 2001 WL

969085, at *7 (D. Haw. Mar. 21, 2001) (finding a fact question existed where

_____

[5] While the Yip Declaration does not include specific information that would raise a fact question whether Plaintiff is a seaman, Defendants argue in their Opposition that "Plaintiff spent less than thirty percent of his time engaged in work as a deck hand" and instead "spent the majority of his time engaged in land-based work activities performing janitorial services, cleaning equipment, and driving employer-owned vehicles."  Defs.' Opp'n to Pl.'s Mot. 1 at 7.  Because "arguments and statements of counsel are not evidence and do not create issues of material fact capable of defeating an otherwise valid motion for summary judgment," the court does not consider these unsubstantiated statements.  *See Barcamerica Int'l USA Trust v. Tyfield Importers, Inc.*, 289 F.3d 589, 593 n.4 (9th Cir. 2002) (quoting *Smith v. Mack Trucks*, 505 F.2d 1248, 1249 (9th Cir. 1974) (per curiam)).

Plaintiff claimed he spent forty percent of his time on the vessel, while Defendants estimated that Plaintiff spent only ten to twenty percent of his time on the vessel). Accordingly, the court finds that Defendant's vague assertions about Plaintiff's duties are insufficient to create a fact question that Plaintiff did not have a substantial connection to the M/V ALOHA PARASAIL.

Defendants also argue that Plaintiff was not a seaman because he worked at most only on a part-time basis. Defs.' Opp'n at 7-8. Defendant cites no caselaw to support the proposition that a part-time employee cannot be a seaman. Indeed, the court finds no such requirement. *See Lunsford v. Fireman's Fund Ins. Co.*, 635 F. Supp. 72 (E.D. La. 1986) (finding that a part-time cleaning lady aboard a docked pleasure yacht was a "seaperson" for purposes of the Jones Act). Further, to the extent that Defendants suggest that Plaintiff's connection with the vessel was only "transitory or sporadic," the court rejects this argument. The evidence presented establishes that Plaintiff "performed a significant part of his work on board the vessel on which he was injured, with at least some degree of regularity and continuity," satisfying the test for seaman status. *See Chandris*, 515 U.S. at 368-69; *cf. Papai*, 520 U.S. at 1542 (finding that the twelve prior discrete working engagements the plaintiff had with the vessel, spanning over 2-1/4 years, were separate from the one in question such that his connection to the vessel was

15

"transitory or sporadic" and plaintiff was not a seaman).

The court therefore GRANTS Plaintiff's Motion for Summary

Judgment on his seaman status under the Jones Act.

## B.    Plaintiff's Claim for Maintenance and Cure

Plaintiff argues that as a seaman injured while servicing a vessel, he is

entitled to maintenance in the amount of at least $50 per day, and cure for all of his

medical expenses.  The court first addresses whether Plaintiff is entitled to

maintenance and cure, and, finding that Plaintiff is entitled to receive maintenance

and cure, addresses the proper time period for maintenance and cure, the amount of

compensation, and which specific Defendants are liable for maintenance and cure.

### 1.    *The Obligation to Pay Maintenance and Cure*

"Maintenance and cure is the obligation . . . to care for a seaman

injured during the course of maritime employment."  *Kopczynski v. The*

*Jacqueline*, 742 F.2d 555, 559 (9th Cir. 1984).  "'Maintenance' is compensation

for room and board expenses incurred while the seaman is recovering from the

illness or injury."  *Berg v. Fourth Shipmor Assocs.*, 82 F.3d 307, 309 (9th Cir.

1996); *see also Gardiner v. Sea-Land Serv., Inc.*, 786 F.2d 943, 946 (9th Cir. 1986)

("The seaman is entitled to food and lodging of the kind and quality of that which

he would receive aboard ship." (citing *Calmar S.S. Corp. v. Taylor*, 303 U.S. 525,

16

528 (1938))).  In comparison, "cure" refers to the employer's obligation "to pay the

seaman's medical expenses until he reaches maximum recovery."  *Berg*, 82 F.3d at

309.  When a seaman is injured in the service of a vessel, the employer must pay

maintenance and cure even where the employer is not at fault.  *Aguilar v. Standard

Oil Co. of N.J.*, 318 U.S. 724, 730 (1943); *see also Crooks v. United States*, 459

F.2d 631, 632 (9th Cir. 1972).[6]

   The court finds that Plaintiff has carried his burden of establishing

that he is entitled to maintenance and cure.  As discussed above, Plaintiff is a

seaman.  The undisputed evidence presented further establishes that Plaintiff

injured himself in the service of the M/V ALOHA PARASAIL.  Specifically,

Plaintiff injured himself while jumping onto the Vessel to get it ready for the day's

work.  *See* Pl.'s Decl. ¶ 8.

   In opposition, Defendants argue that Plaintiff did not injure himself

---

 [6]  The court recognizes that it is an open question whether a pretrial motion for
maintenance and cure should be viewed under the summary judgment standard or through an
approach that takes into account the flexibility that admiralty law affords to the court and the
deference afforded to seamen.  *See, e.g.*, *Best v. Pasha Haw. Transport Lines, LLC*, 2008 WL
1968334, at *1 (D. Haw. May 6, 2008) (discussing that Ninth Circuit cases have not treated such
motions consistently); *Buenbrazo v. Ocean Alaska, LLC*, 2007 WL 3165523, at *1 (W.D. Wash.
Oct. 24, 2007) (noting the "obvious tension" between summary judgment and resolving all
doubts to the seaman).  The court need not resolve this issue -- even applying the summary
judgment standard, the court finds that Plaintiff is entitled to maintenance and cure.  Further, as
to the portions of Plaintiff's Motion that the court denies, even under a more flexible approach,
Plaintiff has not provided the court sufficient information to determine the amount of
maintenance and the specific Defendants liable for these amounts.

while in service of any vessel because he was scheduled to start work at 7:00 a.m. and was never compensated for any work performed that day.  *See* Yip Decl. ¶¶ 9-10.  The court recognizes that there are instances where a seaman injured while off-duty and on personal recreation time is not covered by the Jones Act.  *See King v. Holo Holo Charters, Inc.*, 2007 WL 1430348 (D. Haw. May 10, 2007) (discussing cases).  There is no question, however, that Plaintiff was serving the Vessel's interests at the time of the accident -- the undisputed evidence presented establishes that Plaintiff boarded the M/V ALOHA PARASAIL to begin work and not for some form of personal recreation.  That KBOS was not to begin paying Plaintiff until his scheduled 7:00 a.m. start times does not change this analysis -- Plaintiff injured himself in serving the Vessel's interest, not his own.  To deny Plaintiff maintenance and cure under these circumstances would be inconsistent with Defendants' obligation to care for Plaintiff's injuries sustained during the course of his maritime employment and would undermine the strong public interest in requiring a martime employer to provide maintenance and cure.  Accordingly, Plaintiff is entitled to maintenance and cure.

### 2.     Time Period

"A shipowner is liable to pay maintenance and cure until the point of maximum medical cure, where it is probable that further treatment will result in no betterment of claimant's condition.  Whether a seaman has reached maximum medical cure is a medical question."  *Rashidi v. Am. President Lines*, 96 F.3d 124, 128 (5th Cir. 1996) (internal citation omitted); *see also Farrell*, 336 U.S. at 517-19; *McMillan v. Tug Jane A. Bouchard*, 885 F. Supp. 452, 459 (E.D.N.Y. 1995) ("'Maximum medical cure' is reached when the seaman recovers from the injury, the condition permanently stabilizes or cannot be improved further."); *Whitman v. Miles*, 294 F. Supp. 2d 117, 123 (D. Me. 2003) (opining that maintenance and cure does not hold a ship to permanent liability for a pension, and that obligation ceases once disabling condition has been deemed incapable of being improved, irrespective of need for continuing medical treatment and care).

As for the time period for maintenance and cure, Plaintiff has carried his burden of coming forth with the evidence that he has not yet reached maximum recovery such that he remains entitled to compensation.  Specifically, a June 2, 2009 memo by Dr. Kevin Christensen, Plaintiff's doctor, states that Plaintiff lacks full extension in his knee and still suffers anterior knee pain.  Pl.'s Ex. D.  Dr. Christensen prescribed a hinged-knee brace and physical therapy and asserts that

Plaintiff can regain full knee extension. *Id.* Plaintiff has not received this physical therapy, however, because he lacks funds. Pl.'s Decl. ¶ 20.

In opposition, Defendants argue that Plaintiff is no longer injured because Plaintiff was able to work for three weeks on the fishing vessel the KOLEA and has offloaded tuna from boats. While Plaintiff did carry out these jobs after his injury, that Plaintiff performed some work does not address the *medical* question of whether he is has reached maximum cure. *See Rashidi*, 96 F.3d at 128; *see also Collick v. Weeks Marine, Inc.*, 680 F. Supp. 2d 642, 657-58 (D. N.J. 2009) ("The fact that Plaintiff has taken a part-time job as a cabinet maker in order to make his mortgage payments does not lessen the public interest in requiring a maritime employer to provide maintenance and cure benefits to its injured employee."). Without any medical evidence calling into question Dr. Christensen's statements, Defendants have failed to raise a genuine issue of material fact that Plaintiff has not reached maximum medical cure.

Defendants further argue that Plaintiff is no longer injured because he is now receiving unemployment benefits, which means that he is able and available for work. *See* Defs.' Opp'n to Pl.'s Mot. 2 at 8 (citing Hawaii Revised Statutes § 383-29). The court rejects this argument as well -- that Plaintiff can perform some work does not shed light on whether he is able to perform the work he previously

20

did before his injury or whether he has reached maximum medical cure.

Finally, Defendants argue that any amount of maintenance awarded should be offset by the monies Plaintiff received through subsequent work and unemployment benefits. The Supreme Court has rejected such argument:

> It would be a sorry day for seamen if shipowners, knowing of the claim for maintenance and cure, could disregard it, force the disabled seaman to work, and then evade part or all of their legal obligation by having it reduced by the amount of the sick man's earnings. This would be a dreadful weapon in the hands of unconscionable employers and a plain inducement . . . to use the withholding of maintenance and cure as a means of forcing sick seamen to go to work when they should be resting, and to make the seamen themselves pay in whole or in part the amounts owing as maintenance and cure.

*Vaughan v. Atkinson*, 369 U.S. 527, 533 (1962) (citations omitted).

Accordingly, the court finds that Plaintiff is entitled to maintenance and cure from the date of his injury until he reaches maximum cure.

### 3.   *Amount of Maintenance and Cure*

The evidence presented establishes that Plaintiff has incurred over $30,000 in medical bills, and that Plaintiff still needs additional medical care to reach maximum recovery. Plaintiff is plainly entitled to these amounts as cure.

In determining maintenance, the court must look at not only reasonable expenses, but also Plaintiff's actual expenses. Specifically, "[a] seaman

21

is entitled the reasonable cost of food and lodging, provided he has incurred the

expense." *Hall v. Noble Drilling, Inc.*, 242 F.3d 582, 587 (5th Cir. 2001).

Determining the maintenance award involves three steps:

> First, the court must estimate two amounts: the plaintiff seaman's actual costs of food and lodging; and the reasonable cost of food and lodging for a single seaman in the locality of the plaintiff.  In determining the reasonable costs of food and lodging, the court may consider evidence in the form of the seaman's actual costs, evidence of reasonable costs in the locality or region, union contracts stipulating a rate of maintenance or per diem payments for shoreside food or lodging while in the service of a vessel, and maintenance rates awarded in other cases for seamen in the same region.
> . . .
> Second, the court must compare the seaman's actual expenses to reasonable expenses.  If actual expenses exceed reasonable expenses, the court should award reasonable expenses.  Otherwise, the court should award actual expenses.  Thus, the general rule is that seamen are entitled to maintenance in the amount of their actual expenses on food and lodging up to the reasonable amount for their locality.
> Third, there is one exception to this rule that the court must consider.  If the court concludes that the plaintiff's actual expenses were inadequate to provide him with reasonable food and lodging, the plaintiff is entitled to the amount that the court has determined is the reasonable cost of food and lodging.  This insures that the plaintiff's inability to pay for food and lodging in the absence of maintenance payments does not prevent him from recovering enough to afford himself reasonable sustenance and shelter.

*Id.* at 590.

Applying this framework, the evidence Plaintiff has presented is insufficient for the court to determine the proper amount of maintenance.

First, Plaintiff's proffer of reasonable expenses, without more explanation, is insufficient.  Plaintiff presents evidence regarding reasonable expenses through the 2006 report of economist Jack P. Suyderhoud (the "Suyderhoud Report"), who calculated the cost of living in Hawaii as $57.00 per day for a seaman-plaintiff in *Miller v. Smith Maritime, Ltd.*, Civ. No. 05-00490 HG-BMK.  Pl.'s Ex. H.  The Suyderhoud Report calculates this amount based on two sets of data -- one set from the Economic Research Institute providing information for a single minimum wage earner living with friends or parents contributing partial rent ("ERI data"), and the second from the U.S. Bureau of Labor Statistics providing data on single-person households with annual income in the $50,000 to 70,000 range ("Labor statistics").

The Suyderhoud Report is insufficient because it provides no explanation of why the ERI data and Labor statistics are the appropriate measures for maintenance for a seaman, much less precisely how the Suyderhoud Report used this data to calculate maintenance.  Further, both the ERI data and Labor statistics include in their calculations amounts which either should not be included and/or are too vague to determine whether they should be included in the

23

maintenance calculation, such as "consumables," "entertainment," and "miscellaneous." *Id.* at 3-4. Without more precise information, the court cannot determine whether $57 per day is indeed a reasonable amount to cover food and lodging in the Honolulu area.

Second, Plaintiff has presented no direct evidence of actual expenses, which is a necessary component in determining maintenance. *See Hall*, 242 F.3d at 590 ("The plaintiff must present evidence to the court that is sufficient to provide an evidentiary basis for the court to estimate his actual costs."); *see also Miller v. Smith Maritime, Ltd.*, 2007 WL 1450421, at *1 (D. Haw. May 14, 2007) (explaining that maintenance requires consideration of actual expenses); *McCart v. Prysmian Power Cables & Systems USA, LLC*, 2007 WL 2257149, at *1 (W.D. Wash. Aug. 3, 2007) (discussing that courts consider both actual costs and reasonable costs in determining maintenance); *Peake v. Chevron Shipping Co.*, 2004 WL 1781008, at *5 (N.D. Cal. Aug. 10, 2004) (considering evidence of actual expenses).

Instead, Plaintiff asserts that he has depleted his savings, lived on handouts of food, borrowed money from family and friends, has been homeless, and receives food stamps. *See* Pl.'s Decl. ¶ 19. While the court certainly sympathizes with Plaintiff's position -- caused at least in part due to his injury and

KBOS's termination of maintenance payments -- this statement is not evidence of

Plaintiff's actual expenses and the court cannot speculate regarding how much

Plaintiff has spent on food and lodging since January 30, 2009.  While it appears

that Plaintiff's actual expenses over this time period are likely "inadequate to

provide him with reasonable food and lodging" such that the "reasonable" cost of

maintenance should be substituted for the actual costs, *see Hall*, 582 F.2d at 590,

Plaintiff has not presented sufficient evidence at this time to carry his burden.

In opposition, Plaintiff cites to *McWilliams v. Texaco, Inc.*, 781 F.2d

514 (5th Cir. 1986), as suggesting that maintenance can be determined without

considering actual expenses.  *McWilliams* does not support Plaintiff's position, and

indeed specifically recognizes that actual expenses are "a relevant starting point in

this fact-specific inquiry."  *McWilliams*, 781 F.2d at 518.  Simply put, actual

expenses are a relevant inquiry to determine maintenance and Plaintiff has failed to

provide the court sufficient information to determine the proper amount of

maintenance.[7]

Thus, Plaintiff is entitled to maintenance from January 30, 2009 until

the time he reaches maximum cure.  Plaintiff has failed to prove, however, the

---

[7] This requirement should come as no surprise to Plaintiff's counsel. In *Miller*, where Plaintiff's counsel submitted the Suyderhoud Report, Plaintiff was required to submit information on Plaintiff's actual living expenses.  *Miller v. Smith Maritime, Ltd.*, 2007 WL 1450421, at *3 (D. Haw. May 14, 2007).

proper amount of maintenance.

### 4. Defendants Liable for Maintenance and Cure

Finally, the court addresses which specific Defendants Plaintiff has established are liable for maintenance and cure. "[T]he Jones Act applies only between employees and their employers." *Mahramas v. Am. Export Isbrandtsen Lines, Inc.*, 475 F.2d 165, 170 (2d Cir. 1973) (citing *Moragne v. States Marine Lines, Inc.*, 398 U.S. 375, 394 (1970); *Panama R.R. v. Johnson*, 264 U.S. 375, 387-88 (1924)). Accordingly, "[a]n action for maintenance and cure can [] be maintained only against the employer because the right arises out of and is implied in the contract of employment." *Id.* (citing *Aguilar*, 318 U.S. at 730; *Calmar Steamship Corp. v. Taylor*, 303 U.S. 525, 527 (1938)).

Plaintiff was employed by KBOS; therefore KBOS is liable for maintenance and cure. Plaintiff further argues, however, that all Defendants are jointly and severally liable because they are all mere alter egos of Yip. To prove alter ego liability, Plaintiff must establish, among other things, that Yip exercised such domination over these companies that none of them manifested any corporate interests of their own, and that respecting corporate separateness would work an injustice on a third party. *Kilkenny v. Arco Marine Inc.*, 800 F.2d 853 (9th Cir. 1986); *see also Robert's Haw. Sch. Bus, Inc. v. Laupahoehoe Trans.*, 91 Haw. 224,

241-42, 982 P.2d 853, 870-71 (1999), *overruled on other grounds by* Hawaii Revised Statutes § 480-2 (stating that a corporation may be the alter ego of another "where recognition of the corporate fiction would bring about injustice and inequity or when there is evidence that the corporate fiction has been used to perpetrate a fraud or defeat a rightful claim").[8]  While Plaintiff has presented evidence that Yip owns all of the corporate Defendants, this evidence, standing on its own, is insufficient to establish alter ego liability as to all Defendants.  The court therefore finds that Plaintiff has proven at this time only that KBOS is liable to Plaintiff for maintenance and cure.

In sum, the court GRANTS Plaintiff's Motion for Summary Judgment against KBOS as to cure, and GRANTS in part and DENIES in part Plaintiff's Motion as to maintenance and the other Defendants.

## C.      Defendants' Defense of Limitation of Liability

Plaintiff seeks summary judgment on Defendants' defense of limitation of liability pursuant to the Limitation Act.

The Limitation Act, 46 U.S.C. § 30505 (formerly codified as 46 U.S.C. app. § 183) limits a vessel owner's liability on a negligence or

---

[8]  Plaintiff does not address whether state or federal law applies to the alter ego determination, and the court need not decide which substantive law applies because the standards are similar and Plaintiff has not carried his burden under either standard.

unseaworthiness claim to the value of the vessel so long as the owner did not have privity or knowledge of the causative agent.[9]

To the extent Defendants plead this defense as to Plaintiff's claim for maintenance and cure, such defense does not apply -- "a shipowner cannot limit its liability for maintenance and cure.  It may bring a limitation action only in response to a finding of negligence or unseaworthiness."  *Brister v. A.W.I., Inc.*, 946 F.2d 350, 361 (5th Cir. 1991); *see also In re RJF Int'l Corp.*, 354 F.3d 104, 107 (1st Cir. 2004) ("[M]aintenance and cure is exempt from the limitation of liability rules in admiralty.").  Accordingly, to the extent that Defendants allege a limitation defense on Plaintiff's claim for maintenance and cure, the court GRANTS Plaintiff's Motion for Summary Judgment.

---

[9]  The Limitation Act, 46 U.S.C. § 30505, provides:

> (a) In general.--Except as provided in section 30506 of this title, the liability of the owner of a vessel for any claim, debt, or liability described in subsection (b) shall not exceed the value of the vessel and pending freight.  If the vessel has more than one owner, the proportionate share of the liability of any one owner shall not exceed that owner's proportionate interest in the vessel and pending freight.

> (b) Claims subject to limitation.--Unless otherwise excluded by law, claims, debts, and liabilities subject to limitation under subsection (a) are those arising from any embezzlement, loss, or destruction of any property, goods, or merchandise shipped or put on board the vessel, any loss, damage, or injury by collision, or any act, matter, or thing, loss, damage, or forfeiture, done, occasioned, or incurred, without the privity or knowledge of the owner.

As for Plaintiff's other claims, the court finds that determining Plaintiff's Motion would be premature at this time due to the burden-shifting framework required in determining Defendants' claim for limited liability.  Under the Limitation Act, a claimant seeking to recover damages must first demonstrate the vessel owner's negligence or unseaworthiness of the vessel.  *Walston v. Lambertsen*, 349 F.2d 660, 663 (9th Cir. 1965); *see also Carr v. PMS Fishing Corp.*, 191 F.3d 1, 4 (1st Cir. 1999).  If the claimant does not carry its burden, then the vessel owner is exonerated on those claims.  *See In the Matter of Hechinger*, 890 F.2d 202, 207 (9th Cir. 1989) ("The whole doctrine of limitations of liability presupposes that a liability exists which is to be limited.  If no liability exists there is nothing to limit.").  If the claimant does carry its burden, then the burden shifts to the vessel owner to show lack of privity or knowledge.  *Carr*, 191 F.3d at 4.

Plaintiff asks the court to skip the first inquiry and address only the second inquiry.  The court will not address the second inquiry, however, until after negligence and/or unseaworthiness has been determined.  *See Brown v. Teresa Marie IV, Inc.*, 477 F. Supp. 2d 266, 274 (D. Me. 2007) (declining to address privity and knowledge where genuine issue of material fact existed as to seaworthiness).  Otherwise, the court's determination of the second inquiry only would amount to an impermissible advisory opinion.

In opposition, Plaintiff argues that caselaw addressing limitation actions -- as opposed to the defense of limitation -- supports the proposition that the court may decide privity and knowledge without addressing liability.  Pl.'s Mot. 13; Pl.'s Reply 4.  The Limitation Act allows a ship owner to bring an action seeking limitation of liability, which may prevent the injured party from bringing its own action for damages until after the limitation is determined.  Courts have found that where privity and knowledge are apparent, the proper course of action is to allow the injured party to bring its own action so that a jury may determine negligence.  *See, e.g.*, *Suzuki of Orange Park, Inc. v. Shubert*, 86 F.3d 1060, 1063 (11th Cir. 1996); *Fecht v. Makowski*, 406 F.2d 721, 722-23 (5th Cir 1969).  No such circumstances apply here -- the cases cited by Plaintiff do not address the *defense* of limitation of liability and Plaintiff is able to litigate his claims in this action.

The court therefore GRANTS Plaintiff's Motion for Summary Judgment on Defendants' limitation of liability defense as to Plaintiff's claim for maintenance and cure, and DENIES the Motion as to Plaintiff's other claims.

## V.  <u>CONCLUSION</u>

Based on the above, the court: (1) GRANTS Plaintiff's Motion for Summary Judgment as to Plaintiff's seaman status; (2) GRANTS in part and

DENIES in part Plaintiff's Motion for Summary Judgment on maintenance and cure; and (3) GRANTS in part and DENIES in part Plaintiff's Motion for Summary Judgment Defendants' limitation of liability defense.  As a result of this Order, Plaintiff is deemed a seaman for purposes of the Jones Act and KBOS is ordered to pay Plaintiff cure for his medical expenses incurred to date and until he reaches maximum recovery.  As agreed upon at the May 24, 2010 hearing, within twenty-four hours of receiving this Order, counsel for Plaintiff shall contact Magistrate Judge Leslie E. Kobayashi for the parties to discuss a reasonable maintenance amount and settlement of this action.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, May 24, 2010.



/s/ J. Michael Seabright
_____
J. Michael Seabright
United States District Judge

*Keliihananui vs, KBOS, Inc.,* Civ. No. 09-00151 JMS/LEK, Order: (1) Granting Plaintiff's Motion for Summary Judgment on the Issue of Seaman's Status and Coverage under 46 U.S.C. § 30104, the Jones Act; (2) Granting in Part and Denying in Part Plaintiff's Motion for Summary Judgment Compelling Maintenance and Cure; and (3) Granting in Part and Denying in Part Plaintiff's Motion for Summary Judgment on the Issue of Defendants' Privity and Knowledge with Respect to the Operation of the M/V Aloha Parasail and to Strike Defendants' Limitation of Liability Defense